**WO**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Eric Konrad Schoebel, | No. CV-22-08224-PCT-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Claimant Eric Konrad Schoebel applied for Disability Insurance Benefits and Supplemental Security Income pursuant to Title II and XVI of the Social Security Act ("SSA") on April 1, 2014 and May 30, 2014, respectively. (AR. 58–103.) Schoebel alleged an onset date of December 15, 2012. (AR. 80.) After Schoebel's claims were claims denied initially and on reconsideration, Schoebel requested an administrative hearing before an Administrative Law Judge ("ALJ") and appeared at one in 2016. (AR. 58–103, 1870–93.) The ALJ issued an unfavorable decision, and the Appeals Council denied review of that decision. (AR. 1780–93.)

On March 29, 2019, upon review, this Court remanded Schoebel's claims for further agency proceedings. On May 13, 2020, after a second administrative hearing, the ALJ issued an unfavorable decision, finding Schoebel not disabled. (AR. 1846–69.) The Appeals Council denied review of that decision, making the ALJ's 2020 determination the final decision of the Commissioner of the Social Security Administration. (AR.1707–13.)

Schoebel seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). For the reasons herein, the Court affirms.

## I.   Standard

A district court only reviews the issues raised by the party challenging an ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A court will uphold an ALJ's decision "unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance" and is such that "a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Burch v. Burnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). A court will uphold an ALJ's decision if the "evidence is susceptible to more than one rational interpretation." *Id.* That said, the court should "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.*

To determine whether a claimant is disabled for the purposes of the SSA, the ALJ must follow a five-step sequential evaluation. *See* 20 C.F.R. §§ 404.1520, 416.920. In steps one through four, the burden is on the claimant to demonstrate a severe impairment and an inability to perform past work. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). In step five, the burden shifts to the Commissioner to demonstrate the claimant is not disabled. *Id.*

At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, then the claimant is not disabled within the meaning of the SSA, and the inquiry ends. *Id.* If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment—or combination of impairments—that meets the duration requirement. *Id.* § 404.1520(a)(4)(ii). If the claimant does not have such an impairment, he is not disabled, and the inquiry ends. *Id.* If, however, the claimant has such an impairment, the ALJ proceeds to step three, where the ALJ considers whether the claimant's impairment or

combination of impairments meets, or is medically equal to, an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(ii). If so, the claimant is disabled and entitled to benefits under the SSA. *Id.* If not, then the ALJ moves to the fourth step, at which the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant is capable of such work, the claimant is not disabled, and inquiry ends. If not, the ALJ proceeds to fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(iv). If claimant is not capable of such work, the claimant is disabled and is entitled to benefits. *Id.*

## II.    Analysis

Schoebel raises two issues for the Court's consideration: (1) whether the ALJ properly evaluated the medical opinion of Schoebel's treating nurse practitioner and (2) whether the ALJ properly evaluated Schoebel's symptom testimony. (Doc. 13.)

### A. Substantial evidence supports the ALJ's evaluation of Nurse Practitioner Powell's opinion.

Schoebel first challenges the ALJ's consideration of Nurse Practitioner Powell's ("NP Powell") opinion. Schoebel and the Commissioner disagree, however, as to the standard the ALJ was required to apply. Schoebel asserts that under pre-2017 SSA regulations, nurse practitioners are considered "other sources" (rather than "acceptable medical sources"), and as such, the ALJ was required to provide a germane reason for discounting NP Powell's opinion. (Doc. 13 at 13.) The Commissioner, on the other hand, asserts that because the medical opinion at issue—an assessment of Schoebel's mental capacities (AR. 796–97)—was completed by both NP Powell and Dr. Tilyou (who is an acceptable medical source), the ALJ was required to give "specific and legitimate reasons" reasons supported by substantial evidence in the record for discounting the opinion. (Doc. 15 at 14.) The Court need not reach this issue because even under the higher standard of

1    "specific and legitimate reasons," the ALJ's evaluation was proper.

2         In 2016, NP Powell and Dr. Tilyou opined that Schoebel had marked limitations in

3    his ability to understand and remember detailed instructions; interact appropriately with

4    the public, supervisors, and co-workers; and respond appropriately to work pressures in a

5    usual work setting and to changes in a routine work setting. They also opined that the based

6    on Schoebel's physical and mental limitations, Schoebel would be off task more than 30%

7    in an 8-hour workday, 5 days per week, in a competitive work environment and that he

8    would be absent from work five days or more per month. Further, they found that Schoebel

9    would be less than 50% efficient in his ability to perform a full-time job on a sustained

10   basis. (AR. 796–97.)

11        The ALJ accorded little weight to this assessment, finding that the opinion is

12   (1) inadequately supported by clinical findings or other objective medical evidence and

13   relies only on Schoebel's subjective reports, and (2) inconsistent with Schoebel's treatment

14   records. (AR. 1860.) These are specific and legitimate reasons for discrediting NP Powell

15   and Dr. Tilyou's assessment.

16        First, in opining on Schoebel's limitations, NP Powell and Dr. Tilyou provided little

17   explanation as to the bases for their conclusions. Indeed, their only remark states, "Patient

18   has a history of not being able to hold on to a job and has not been able to work in the last

19   3 years due to outbursts, mood swings, and anxiety." (AR. 797.) No clinical findings or

20   other objective medical evidence is included in the opinion. It was rational for the ALJ to

21   find that their opinion lacked adequate support. *See Ford v. Saul*, 950 F.3d 1141, 1155 (9th

22   Cir. 2020) ("[T]he ALJ may permissibly reject check-off reports that do not contain any

23   explanation of the bases of their conclusions.").

24        It was also rational for the ALJ to discredit the opinion based on the inconsistency

25   between Schoebel's subjective report that he "has not been able to work in the last 3 years"

26   and other parts of the record, which demonstrate that Schoebel has, at times, cooked and

27   cleaned in lieu of rent (*see e.g.*, AR 556, 613, 642) and that, at other times, he deliberately

28   avoided finding work because of the adverse effect it would have on his eligibility for

disability benefits (*see e.g.* AR. 765). Where a treating provider's opinion is largely based on a claimant's self-reports and the ALJ finds the claimant not credible (as in this case and discussed further below), the ALJ may discount the treating provider's opinion. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

Second, substantial evidence supports the ALJ's finding that NP Powell and Dr. Tilyou's assessed limitations are inconsistent with Schoebel's treatment record. In contrast to NP Powell and Dr. Tilyou's opinion that Schoebel has marked limitations in social interactions, Schoebel's treatment record demonstrates that he regularly attended group therapy sessions and socialized well with others. (*See e.g.*, AR 1508, 1522, 1566.) Schoebel points to places in the record demonstrating that his symptoms "sometimes kept him from participating in mental health groups/ activities." (Doc. 13 at 14.) That might be so. It remains, however, that the ALJ was entitled to resolve these conflicts in the record; the Court may not substitute its opinion on weight to be given to conflicting evidence. *See Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017) (citing *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999)) (noting that it is a "fundamental principle than an agency, its experts, and its [ALJs] are better positioned to weigh conflicting evidence than a reviewing court"). In short, the Court finds that the ALJ provided specific and legitimate reasons supported by substantial evidence for discrediting NP Powell and Dr. Tilyou's assessment.[1]

**B. The ALJ provided clear and convincing reasons supported by substantial evidence for discrediting Schoebel's symptom testimony.**

---

[1] In challenging the ALJ's consideration of NP Powell's opinion, Schoebel also implicitly challenges the ALJ's decision to afford Dr. Rose's opinion "great weight." (Doc. 13 at 17.) Dr. Rose, a consultative examiner, opined that Schoebel had minor memory deficits and would likely display mild to moderate social skill deficits in the workplace, but that he did not present with any significant attention or concentration problems. (AR. 498–504.) The ALJ found Dr. Rose's opinion consistent with clinical findings in the record as well as Schoebel's self-reported ability to function. (AR. 1859.)

Schoebel contends that Dr. Rose was not provided with background information on his condition, but the record contradicts this. (*See* AR. 498 (noting that information presented in the report "was gathered from [Schoebel], and DDS").) Schoebel also asserts that the ALJ failed to identify parts of the record that support Dr. Rose's opinion. The Court disagrees. The ALJ's decision adequately discusses clinical findings that support Dr. Rose's opinion; and even if it did not, an ALJ need only discuss at length why "significant probative evidence has been rejected." *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).

To evaluate the credibility of a claimant's testimony regarding pain and symptoms, the ALJ must perform a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment that "could reasonably be expected to produce pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). Second, if the claimant meets this first test and absent evidence of malingering, the ALJ then "can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.*; *Garrison*, 759 F.3d at 1015. This is the most demanding standard in Social Security cases. *Garrison*, 759 F.3d at 1015. "A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the [ALJ] . . . did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991)).

Schoebel testified that he has been unable to work since his onset date due to his anxiety and depression. He also alleged disabling physical impairments—that he suffers from lower back pain, which causes him difficulty in walking, and that he can walk or stand for ten minutes at a time and that he has to rest for 30 minutes to two hours during the day. Schoebel also testified that he stays in bed all day at least three days per week. He also noted that he suffers from ADHD, which affects his ability to concentrate, and that he relies on the assistance of many people to get by. (AR. 1741–54.)

The ALJ found that although Schoebel's medically determinable impairments could reasonably be expected to cause some of his alleged symptoms, Schoebel's statements regarding the severity of his symptoms were not entirely consistent with objective medical evidence in the record, his treatment records, his daily activities, and his work activity since his alleged onset date. (AR. 1858.)

"In reaching a credibility determination, an ALJ may weigh consistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors." *Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009);

*Ahearn v. Saul*, 988 F.3d 1111, 1116–17 (9th Cir. 2021) (holding that claimant's daily activities provided substantial evidence to support ALJ's conclusion that the record "was inconsistent with the severity of the limitations" claimant described in his testimony). Additionally, an ALJ may consider whether objective medical evidence supports the claimant's testimony. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

That is what the ALJ did here. The ALJ first noted that in contrast to Schoebel's testimony, objective evidence in the record shows mild to moderate symptoms of depression but not marked limitations. (AR. 1857.) Examinations from 2016 to 2019 note depressed mood but also show largely benign findings, including good concentration and insight, appropriate affect, and normal memory and speech.[2] (*See e.g.*, AR. 533, 2315, 2904.) Records also indicate that Schoebel's symptoms improved with treatment. (*See e.g.*, AR. 562, 2243–48, 2298 (noting improved mood, brighter affect, increased self-reliance and independence, and increased concentration).) It was rational for the ALJ to find that although Schoebel's anxiety and depression create some nonexertional limitations in his ability to work—such as only being able to tolerate occasional contact with coworkers and the public—Schoebel's impairments were not so severe as to be completely debilitating.

The ALJ also noted the inconsistency between Schoebel's claims and his daily activities. For instance, although Schoebel claims that he "does nothing during the day" and that he stays in bed all day for at least three days per week, he also reported that he cooks, cleans both his trailer and his ex-mother-in-law's trailer, and regularly attends group therapy sessions. He also volunteers at the animal shelter, bowls competitively, goes on hikes, and plays golf.[3] Additionally, in lieu of rent, Schoebel cooked dinner for everyone

---

[2] Schoebel asserts that normal cognitive functioning does not undermine a claim of depression and anxiety. (Doc. 13 at 20.) That may be true as a general matter; but here, Schoebel specifically claimed that his depression and anxiety caused him difficulty in concentration and that he was unable to work eight hours a day because he doesn't have the "attention span" for it. (AR. 52, 1754). Thus, because Schoebel tied his cognitive symptoms to his anxiety and depression, it was rational for the ALJ to find that his clinical cognitive results undermined his testimony regarding the severity of such symptoms.

[3] Schoebel contends that some of these activities were performed as part of his treatment and that he "cannot be faulted for following treatment recommendations and participating in treatment activities." (Doc. 13 at 22.) Even so, the ALJ's consideration of such activities is not harmful error. For one, Schoebel does not point to any authority precluding the ALJ from considering a claimant's treatment—and activities prescribed

he lived with and regularly helped around the house. (*See e.g.*, AR. 556, 613, 642.) It was rational for the ALJ to find that such activities were inconsistent with Schoebel's claims of disability.

Finally, the ALJ pointed to Schoebel's work record as further evidence undermining his testimony. For instance, Schoebel reported to medical providers that he does yard work to buy tobacco and pays his rent by cooking and cleaning. (*See e.g.*, AR. 499, 613.) Schoebel also collected unemployment benefits after the alleged onset date and put in job applications in September 2019. (AR. 558, 2562.) The ALJ rationally concluded that this evidence reflects that Schoebel considers himself capable of working—particularly if the incentive is right—and that he has held himself out as available to work, thereby undermining his claim of totally disabling impairments. *See e.g.*, *Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir. 1998) (upholding ALJ's credibility determination where claimant "received unemployment insurance benefits thereafter (apparently considering himself capable of work and holding himself as available for work)").

In sum, the ALJ provided specific, clear, and convincing reasons supported by substantial evidence in discounting Schoebel's symptom testimony. Although Schoebel may advocate for a more favorable reading of the evidence, the Court "may not reweigh the evidence or substitute its judgment for that of the ALJ." *Ahearn*, 988 F.3d at 1115.

**IT IS ORDERED** that the ALJ's decision is **AFFIRMED.** The Clerk is directed to enter judgment accordingly and terminate this case.

Dated this 12th day of August, 2024.

Douglas L. Rayes
Senior United States District Judge

---

therein—in evaluating the credibility of a claimant's symptom testimony. And to the extent that consideration of these activities "faults" Schoebel, it only does so by undermining his testimony, a practical reality when ALJs are required to consider the record as a whole in making disability determinations.